IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

PEDRO A. LOPEZ, LELA SIMS, ROBERT  §
SIMS, LUIS ALFREDO SIERRA T.,  §
YOLANDA C. SIERRA, HOMER  §
HINOJOSA, LUCINDA HINOJOSA,  §
and ILDA CISNEROS,  §
 §
     Plaintiffs,  §     Civil Action No: 3:03-CV-2223-M
 §
v.  §
 §
THE CITY OF DALLAS, TEXAS,  §
 §
     Defendant.  §

## MEMORANDUM OPINION AND ORDER

Before the Court is the Rule 12(b)(6) Motion to Dismiss, filed by Defendant City of

Dallas ("City") on October 22, 2004.  In ruling on the prior Motion to Dismiss directed to the

Plaintiffs' Second Amended Complaint, the Court allowed the Plaintiffs to file a Third Amended

Complaint,[1] addressing the deficiencies the Court found in the Second Amended Complaint.  The

City has renewed the Motion to Dismiss as to the Third Amended Complaint.  For the reasons

stated below, the Motion to Dismiss is **DENIED.**

## I. BACKGROUND

Plaintiffs are African-American and Hispanic owners and occupiers of single family

---

[1]  In this Opinion, the Court will refer to the Plaintiffs' Third Amended Complaint as the
Complaint, or by the abbreviation "Compl."

homes in the Cadillac Heights neighborhood of Dallas, Texas ("Cadillac Heights").  Cadillac

Heights is a predominantly African-American and Hispanic neighborhood located on the south

side of Dallas, near the Trinity River.  Plaintiffs' Complaint alleges five causes of action against

the City.

In Count One, Plaintiffs allege that the City discriminated against them in the provision of

municipal services in violation of the Equal Protection Clause of the Fourteenth Amendment, 42

U.S.C. § 1981, and 42 U.S.C. § 1983.  Plaintiffs allege that as a direct result of the City's zoning

decisions, the residents of Cadillac Heights have received "a different and lower level of

municipal services and facilities."  Compl. ¶ 11, 12, 25.  The Complaint cites as an example the

Dallas City Council's grant in 1997 of a Special Use Permit to allow Texas By-Products to

operate an animal parts rendering facility in Cadillac Heights.  *Id.* ¶ 13.  Plaintiffs allege that the

City Council found that the animal parts rendering facility would "complement or be compatible

with surrounding uses and community facilities; contribute to, enhance, or promote the welfare

of the area."  *Id.*  Plaintiffs state that the rendering facility has "more than doubled in size" and

despite the expiration of the Special Use Permit, the City has not shut down the facility.  *Id.* ¶ 13,

14.  As a result, Plaintiffs allege that they have been subjected to "the sights and smells of animal

parts, offal, and blood spills on the roads in their neighborhood."  *Id.* ¶ 54.  Plaintiffs argue that

this is indicative of the City's "present zoning and land use policies . . . [which] are directly

traceable to the City's past overt racial segregation and other forms of racial, ethnic, and national

origin discrimination in the provision of municipal services."  *Id.* ¶ 19.

In Count Two, Plaintiffs allege that the City discriminated against the Plaintiffs in the

provision of municipal services in violation of 42 U.S.C. § 3604(b) and 24 C.F.R. § 100.65(b)(4).

Plaintiffs allege that the City impermissibly limited the municipal services available to the

Plaintiffs because of their race, color, and/or national origin. *Id.* ¶ 23.  In particular, Plaintiffs

contend that the City has limited its provision of protection from adverse industrial uses and

flooding, and its provision of adequate water drainage. *Id.* ¶ 24.

In Count Three, the Plaintiffs allege that discrimination in municipal services has

rendered dwelling units unavailable to future residents of Cadillac Heights, because of their race,

color, and/or national origin in violation of 42 U.S.C. § 3604(a).  As an example, the Plaintiffs

aver that the City has refused to provide flood protection for Cadillac Heights and that ninety-six

parcels of land currently zoned for single family residential use are in the 100 year flood plain,

and the entire Cadillac Heights neighborhood is in the 800 year flood plain. *Id.* ¶ 33, 34.  The

City prohibits construction of dwelling units in a flood plain and, therefore, many parcels of land

which would otherwise be "available" are rendered unavailable to potential future residents. *Id.*

¶ 34.

In Count Four, Plaintiffs allege discrimination in zoning and land use policies, in

violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d.  Plaintiffs allege that the

City's Development Services Department ("DSD"), which receives federal funds, is responsible

for the administration of the City's zoning and land use policies and practices. *Id.* ¶ 41.

Plaintiffs allege that DSD has denied them protection from adverse industrial uses because of

their race, color, and/or national origin. *Id.* ¶ 43.  Plaintiffs contend that in "predominantly white

areas that are comparable with respect to the need for these services," DSD makes different and

better zoning and land use decisions. *Id.* ¶ 44.

In Count Five, Plaintiffs allege discrimination in the provision of financial assistance, in violation of 42 U.S.C. § 3605 and 42 U.S.C. § 3604(a). Plaintiffs complain that the City's land acquisition program for a proposed Police Academy in Cadillac Heights "perpetuates racial segregation by limiting their choices to housing located in similar predominantly minority neighborhoods." *Id.* ¶ 63, 75. Plaintiffs Robert and Lela Sims allege that they are part of the group of homeowners whose homes are in the area where the City plans to build a new Police Academy. *Id.* ¶ 83, 84. They claim the City is offering to pay "an amount equal to the City's estimate of the fair market value of their home; a relocation assistance payment of no more than $22,500; and a possible mortgage loan in an amount not to exceed $15,000." *Id.* ¶ 64. Plaintiffs claim that the fair market value of the homes in Cadillac Heights has been diminished by the City's discrimination in the provision of municipal services. *Id.* ¶ 66, 67. Plaintiffs argue that the financial assistance offered by the City is not enough to allow them a meaningful choice as to where they will relocate after the City takes their property.

The City seeks dismissal of Counts One, Four, and Five of Plaintiffs' Complaint for two reasons. First, the Defendant argues that those Counts fail to state a claim upon which relief can be granted. Second, the City argues that the Plaintiffs do not have standing to assert the claim regarding the Police Academy land acquisition program.

## II.  ANALYSIS

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a Complaint for

"failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In

considering a Rule 12(b)(6) motion, the Complaint must be liberally construed in favor of the

Plaintiffs, and all well-pled facts in the Complaint must be taken as true. *Campbell v. Wells*

*Fargo Bank,* 781 F.2d 440, 442 (5th Cir. 1980). Dismissal is only appropriate if "it appears

beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which

would entitle [them] to relief." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288

(5th Cir. 2004) (citing *Lowrey v. Texas A & M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir. 1997)). In

deciding the Motion to Dismiss, the Court does not evaluate the Plaintiffs' likelihood of success;

instead, the Court only determines whether the Plaintiffs have stated a legally cognizable claim.

*United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

Plaintiffs "need not state a prima facie case of discrimination, but must give the defendant fair

notice of the nature of the claim and the grounds upon which the claim rests." *Bates v. United*

*States Small Bus. Assoc.*, No. 3:01-CV-1614-D, 2004 U.S. Dist. LEXIS 23208, at *11 (N.D. Tex.

Nov. 16, 2004) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002)).


**A.  Count One**

The City has moved to dismiss Count One of the Complaint for four reasons. First, the

City contends that 42 U.S.C. § 1981 does not provide a cause of action against the City. Second,

the City argues that this claim should be dismissed because the Plaintiffs have not specifically

identified a similarly situated, predominantly white community with which they should be

compared. Third, the Defendant contends that the Plaintiffs have not pled Count One with

sufficient detail.  Fourth, the Defendant claims the Plaintiffs have not pled that the City acted

intentionally.

The City claims that 42 U.S.C. § 1981 "does not provide a separate cause of action

against local government entities."  Mot. Dismiss at 4.  Relying on *Jett v. Dallas Independent*

*School District,* 491 U.S. 701 (1989), the City argues that the Plaintiffs must assert a cause of

action under 42 U.S.C. § 1983 in order to remedy a violation of section 1981.  A number of

courts have held that *Jett* was superseded in 1991 when Congress revised section 1981.  *See, e.g.,*

*Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1209, 1214 (9th Cir. 1996);

*Dennis v. County of Fairfax*, 55 F.3d 151, 156 n.1 (4th Cir. 1995); *Powell v. City of Pittsfield*,

143 F. Supp. 2d 94, 111 (D. Mass. 2001); *Simmons v. Chi. Bd. of Educ.*, No. 97-CV-5451, 2000

WL 1720958, at *6 (N.D. Ill. Nov. 16, 2000); *La Compania Ocho, Inc. v. U.S. Forest Serv.*, 874

F. Supp. 1242, 1251 (D.N.M. 1995).  The district courts in this Circuit have split on this issue.

*See Mosley v. Houston Cmty Coll. Sys.*, 951 F. Supp. 1279, 1289 (S.D. Tex. 1996) (finding that

the 1991 revisions superseded *Jett*); *cf. Jackson v. Dallas Indep. Sch. Dist.*, No. 3:98-CV-1079-

D, 1999 U.S. Dist. LEXIS 1109, at *8 (N.D. Tex. Feb. 1, 1999) ("Absent clear evidence from

Congress to the contrary, the court declines to hold that the addition of § 1981(c) overruled the

holding of *Jett*.").  The Fifth Circuit has not spoken to this issue.  *Evans v. Houston*, 246 F.3d

344, 358 (5th Cir. 2001) ("While we are cognizant of this split of authority over the effect of

subsection (c) on *Jett's* first holding, we nonetheless find it unnecessary to resolve this conflict

today . . .").  This Court likewise declines to resolve this question, because it is unnecessary to

the determination of the issues now presented.  Plaintiffs' Complaint seeks redress of the

Defendant's alleged violations of 42 U.S.C. § 1981, as enforced by 42 U.S.C. § 1983.  Therefore,

the question of whether section 1981 has within itself an enforcement mechanism need not be

reached.

 The City also claims that Plaintiffs do not identify a similarly situated neighborhood or

group of persons.  In support of this contention, the City relies on *Samaad v. City of Dallas,* 940

F. 2d 925 (5th Cir. 1991).  In *Samaad*, a group of plaintiffs argued that their equal protection

rights were violated when the City allowed auto races to take place in an area adjacent to the

plaintiffs' homes.  *Id.* at 941.  Those plaintiffs contended that the City would not have allowed

such races to take place in a predominantly white neighborhood, and that even if it had, it would

have taken precautions to minimize noise and other problems associated with allowing such a

race to take place in a residential area.  *Id.*  However, the plaintiffs did "not allege that there was

an additional suitable location for a grand prix near a predominantly white neighborhood[,] nor

that the defendants chose Fair Park as opposed to some other location, because it abuts minority

neighborhoods."  *Id.*  In reviewing the district court's decision on the Motion for Summary

Judgment, the Fifth Circuit found that "[b]ecause the plaintiffs failed to allege the existence of a

similarly situated non-minority neighborhood  (i.e., one near a location suitable for an automobile

race), their complaint does not allege an equal protection violation."  *Id.*

 *Samaad* must be considered in the light of the Supreme Court's decision in *Swierkiewicz*

*v. Sorema N.A.*, 534 U.S. 506 (2002).  The import of *Samaad* and the cases it cites are

questionable in the wake of *Swierkiewicz*.  In *Swierkiewicz,* the Supreme Court clarified that

specificity in pleadings is only required in a very limited set of cases.  *Id.* at 513.  Here, the

Plaintiffs have alleged that Cadillac Heights was treated differently because of the race, color, and/or national origin of its residents.  The Plaintiffs' failure to identify a similarly situated non-minority community at this point in the litigation is not fatal to their claim.

The City also argues that Count One should be dismissed because the Plaintiffs have not alleged facts showing that the City's decisions have deprived the Plaintiffs of the full and equal benefit of all laws and proceedings.  Mot. Dismiss at 5.  In support of this argument, the City cites *Campbell v. City of San Antonio,* 43 F.3d 973, 975 (5th Cir. 1995).  However, to the extent that *Campbell* "requires a [P]laintiff to go beyond the requirements of Rule 8(a) by alleging facts in support of each and every element of his claim or legal theory, [this Court concurs with another Opinion from this Court] that this is no longer the law."  *Morgan v. City of Waco,* No. 3:01-CV-2818-M, 2002 WL 1776935, at *3 (N.D. Tex. July 30, 2002).  Plaintiffs' Complaint alleges that the City's zoning and land use policies in Cadillac Heights do not protect the property in the neighborhood from flooding, or adverse effects of industrial usage, and do not provide adequate drainage.  Compl. ¶ 9.A, 9.B, 9.C.  Plaintiffs allege that the City uses zoning laws and land use policies to protect the property in predominantly white neighborhoods from such problems.  *Id.* ¶ 9, 10.  Plaintiffs are not required at this stage in the litigation, to identify specifically the zoning and land use ordinances they claim are unfairly enforced.  Plaintiffs' allegations place the City on fair notice as to the nature of their Count One claim.

Finally, the City challenges the sufficiency of Count One of the Plaintiffs' Complaint because the Complaint does not allege facts that would prove that the City intentionally discriminated against the Plaintiffs.  Mot. Dismiss at 5.  The Plaintiffs allege that the problems at

issue are a product of a "systematic maladministration . . . that has lasted from at least 1947 to the present." Compl. ¶ 17. By alleging nearly sixty years of "systematic" discrimination, the Plaintiffs have alleged that the City intentionally discriminated against them.

The City's Motion to Dismiss is denied as to Count One of the Complaint.


## B.  Count Four

The City seeks to dismiss Count Four of the Complaint, contending that the Plaintiffs failed to allege that the City intentionally discriminated in the execution of a particular policy and that the Plaintiffs failed to allege that "discrimination was a substantial or motivating factor for Defendant's actions." Mot. Dismiss at 5. The City has overstated the Plaintiffs' burden at this point in the litigation. The case it cites in support of its argument is a case determining a motion for summary judgment. *Id.* (citing *Miller v. City of Dallas,* No. 3:98-CV-2955-D, 2002 WL 230834, at *2 (N.D. Tex. Feb. 14, 2002)). Against a Motion to Dismiss, the Plaintiffs need only supply a short and plain statement of their claims which is sufficient to place the Defendant on fair notice. *Swierkiewicz*, 534 U.S. at 508; *see also Grimes v. Superior Home Health Care,* 929 F. Supp. 1088, 1092 (M.D. Tenn. 1996) (quoting *Fobbs v. Holy Cross Health Sys. Corp.,* 29 F.3d 1439, 1447 (9th Cir. 1994) ("Although the plaintiff must prove intent at trial, it need not be pled in the complaint.")). The Plaintiffs have placed the City on fair notice of its claims of discrimination in the City's zoning and land use policies, practices, and decisions; therefore, the City's Motion to Dismiss is denied as to Count Four of the Complaint.

**C. Count Five**

The City avers that Count Five[2] of the Complaint should be dismissed for two reasons. First, the City contends that the Plaintiffs do not have standing to assert this claim. Second, the City maintains that the Plaintiffs' claim should be dismissed because it is insufficiently pled.

The City argues that the Plaintiffs lack standing to challenge the land acquisition program. Of the named Plaintiffs, it is only suggested that Robert and Lela Sims are subject to the City's land acquisition program. At this stage in the proceedings, the Plaintiffs' standing or lack thereof can be established by examining the allegations of the Complaint. *See Isaac v. Norwest Mortg*age, No. 3:00-CV-0989-L, 2002 U.S. Dist. LEXIS 9354, at *8 (N.D. Tex. May 23, 2002). "The Supreme Court has held that the sole requirement for standing under the [Fair Housing Act ("FHA")] is the Article III minima." *Lincoln v. Case*, 340 F.3d 283, 289 (5th Cir. 2003) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982)). There are three elements that must be sufficiently alleged for standing under Article III: (1) the existence of an injury in fact; (2) a causal connection between the Defendant's alleged conduct and the alleged injury; and (3) a substantial likelihood that the injury will be remedied by the requested relief. *McConnell v. FEC*, 540 U.S. 93, 225-26 (2003).

As to the first element, injury in fact, Plaintiffs allege that the City's land acquisition program for the new Police Academy is injurious because the amount of relocation assistance

---

[2] The Defendant's argument was purportedly directed to Plaintiffs' claims under 42 U.S.C. §§ 3605, 3604(a). Mot. Dismiss at 6 ("Plaintiffs fail to state a claim under 42 U.S.C. §§ 3605 and 3604(a)."). However, the text of Defendant's argument makes no mention of section 3604(a). Therefore, the Court shall only examine whether Plaintiffs have failed to state a claim in Count Five of their Complaint under section 3605.

offered is insufficient to allow the Plaintiffs to relocate anywhere other than another predominantly minority community.  The City contends that the Plaintiffs have not sufficiently alleged the existence of an injury in fact because the Sims have not expressly contended that they are subject to the acquisition program.  Mot. Dismiss at 7.  The Court must determine whether the Plaintiffs have met their burden by pleading that they "will be" subject to the land acquisition program.

"[A]n injury in fact [is] an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *United States v. Hays*, 515 U.S. 737, 743 (1995).  Plaintiffs' allegations are sufficient to claim that the Sims are subject to the land acquisition program, and this allegation is sufficiently concrete, particularized, and imminent.  As owners and occupiers of one of the fifty owner-occupied single family homes in the Police Academy acquisition project boundary, the Sims will be subject to the land acquisition program described in the Complaint.  Compl. ¶ 63, 64, 83, 84, 85.  This injury is not hypothetical or abstract, because the Plaintiffs' allegations sufficiently detail the program in question and state that the Sims are part of the group of homeowners that are to be subject to it.  Thus, the Plaintiffs have met their requirement for alleging the existence of an injury in fact.

Article III also requires that the Plaintiffs allege a causal connection between the Defendant's alleged conduct and the alleged injury.  In other words, the Plaintiffs must allege that their injury is "fairly traceable to the [D]efendant's allegedly unlawful conduct."  *Allen v. Wright,* 468 U.S. 737, 751 (1984).  The injury that Plaintiffs allege to be caused by the land acquisition program is the perpetuation of racial segregation in housing.  Compl. ¶ 75.  Plaintiffs

-11-

allege that this injury is caused by the limited housing choices available to the Plaintiffs, due to the amount of relocation assistance offered by the City. *Id.* In *Allen*, the Supreme Court denied standing to a group of parents of African-American school children seeking to challenge IRS enforcement of provisions of the Tax Code which denied tax-exempt status to schools that discriminated on the basis of race. The Supreme Court held that the plaintiffs did not have standing because the link between the injury – segregated schools – and the Defendant's conduct – allowing segregated private schools to retain their tax-exempt status – was too attenuated. *Id.* at 759. The Court found the chain of causation broken because "[i]t involve[d] numerous third parties (officials of racially discriminatory schools receiving tax exemptions and the parents of children attending such schools) who may not even exist in respondents' communities and whose independent decisions may not collectively have a significant effect on the ability of public school students to receive a desegregated education." *Id.* The Plaintiffs in this case, as opposed to the Plaintiffs in *Allen*, are seeking to challenge City decisions that directly affect the housing options for the Plaintiffs. The Sims and the "relocation class" they seek to represent claim that the City is offering them an amount of financial assistance for their relocation, which limits them to relocating to other predominantly minority communities. Thus, the Plaintiffs have met their burden to plead that their alleged injury is fairly traceable to the Defendant's alleged conduct.

As to the final element of standing, the Plaintiffs must plead that there is a substantial likelihood that the injury will be remedied by the requested relief. The Plaintiffs are requesting a permanent injunction that would require the City to modify its relocation assistance program so

that the Plaintiffs would receive an amount equal to their homes' fair market value, plus an

amount necessary to offset the effect that unlawful discrimination has had on the fair market

value of their homes.  Compl. ¶ 91.A.  If the Plaintiffs were awarded such relief their alleged

injury would be remedied.  Thus, the Court finds that Plaintiffs' allegations are sufficient to

provide them with standing to pursue this claim.

As to the City's argument that this claim is insufficiently pled, the Plaintiffs are only

required to plead a short and plain statement of their claims.  *Swierkiewicz*, 534 U.S. at 508; *see*

*also Isaac v. Norwest Mortgage*, 153 F. Supp. 2d 900, 906-07 (N.D. Tex. 2001) ("Norwest also

argues that the discriminatory lending claim should be dismissed as it fails to plead a prima facie

case under 42 U.S.C. § 3605(a) . . . Norwest offers no support for its implication that the details

of the prima facie case must also be pleaded at the initial stage, and [the Court finds that this] is

not a proper measure of whether a complaint fails to state a claim.").  Section 3605 of FHA

outlaws discrimination in residential real estate transactions on the basis of race, color, religion,

sex, handicap, familial status, or national origin by any entity whose business includes engaging

in real estate transactions.  42 U.S.C. § 3605 (2005).  "The business of residential real estate

transactions includes 1) making loans, 2) purchasing loans, 3) providing financial assistance, 4)

selling residential real property, 5) brokering residential real property, or 5) appraising residential

real property."  *Beard v. Worldwide Mortgage Corp.*, 354 F. Supp. 2d 789, 809 (W.D. Tenn.

2005).  The Plaintiffs have alleged that the City's land acquisition program harms Plaintiffs

Robert and Lela Sims by "discriminating against them in the provision of financial assistance for

the purchase of replacement housing in violation of 42 U.S.C. § 3605."  Compl. ¶ 63.

Specifically, the Plaintiffs aver that the City's offer of financial assistance to the Sims and others

similarly situated  is inadequate and "does not eliminate the effect of the City's discrimination in municipal services that has lowered the fair market value of the homes owned by [the Plaintiffs]."  *Id.* ¶ 64, 73.  The City's relocation assistance allegedly "perpetuates racial segregation by limiting [the Plaintiffs'] choices to housing located in similar predominantly minority neighborhoods."  *Id.* ¶ 75.  The Court finds that dismissal of Count Five is not appropriate because it is sufficiently pled and it is not apparent that the Plaintiffs can prove no set of facts to support this claim.  *See Causey,* 394 F.3d at 288.  Defendant's Motion to Dismiss is denied as to Count Five of the Plaintiffs' Complaint.

## III.  CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss is **DENIED**.

**SO ORDERED.**

May12, 2005.

_____
BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE