

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ICT COURT
THERN DISTRICT OF TEXAS
FILED

MAY 24 2006

CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | | |
|---|---|---|
| PEDRO A. LOPEZ, LUIS ALFREDO | § | |
| SIERRA T., YOLANDA C. SIERRA, | § | |
| HOMER HINOJOSA, LUCINDA | § | |
| HINOJOSA, and ILDA CISNEROS, | § | |
| | § | |
| Plaintiffs, | § | No. 3:03-CV-2223-M |
| | § | |
| v. | § | |
| | § | |
| THE CITY OF DALLAS, TEXAS, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are (1) Defendant City of Dallas's Motion to Dismiss, filed February 1, 2006, (2) Defendant's Motion for Summary Judgment, filed February 3, 2006, (3) Defendant's Motion to Strike, filed March 21, 2006, (4) Plaintiffs' Motion to Strike and Motion to Disregard New Arguments, filed April 5, 2006. and (5) Defendant's Motion for Leave to File a Supplemental Appendix, filed April 25, 2006. The Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. The Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**. The Court **DENIES** the Motion to Strike of the City of Dallas (the "City"). The Court **GRANTS** Plaintiffs' Motion to Strike and Motion Disregard New Arguments. The Court **DENIES** Defendant's Motion for Leave to File a Supplemental Appendix.

FACTUAL BACKGROUND

Plaintiffs are African-American and Hispanic owners and occupiers of single family

homes in the Cadillac Heights neighborhood of Dallas, Texas ("Cadillac Heights"). Cadillac Heights is a predominantly African-American and Hispanic neighborhood located on the south side of Dallas, near the Trinity River. Plaintiffs' Complaint[1] alleges four causes of action against the City of Dallas, Texas ("the City").

In Count One, Plaintiffs allege that the City discriminated against them in the provision of municipal services in violation of the Equal Protection Clause of the Fourteenth Amendment, 42 U.S.C. § 1981, and 42 U.S.C. § 1983. Plaintiffs allege that as a direct result of the City's zoning decisions, the residents of Cadillac Heights have received "a different and lower level of municipal services and facilities." Compl. ¶ 11. The Complaint cites as an example the Dallas City Council's grant in 1997 of a Special Use Permit to allow Texas By Products to operate an animal parts rendering facility in Cadillac Heights. *Id.* ¶ 13. Plaintiffs allege that the City Council found that the animal parts rendering facility would "complement or be compatible with surrounding uses and community facilities; [and] contribute to, enhance, or promote the welfare of the area." *Id.* Plaintiffs state that the rendering facility has "more than doubled in size" and despite the expiration of the Special Use Permit, the City has not shut down the facility. *Id.* ¶ 13, 14. As a result, Plaintiffs allege that they have been subjected to "the sights and smells of animal parts, offal, and blood spills on the roads in their neighborhood." *Id.* ¶ 54. Plaintiffs argue that this is indicative of the City's "present zoning and land use policies . . . [which] are directly traceable to the City's past overt racial segregation and other forms of racial, ethnic, and national origin discrimination in the provision of municipal services." *Id.* ¶ 19.

---

[1]The Court will refer to Plaintiffs' Fourth Amended Complaint, filed June 29, 2005, as Plaintiffs' "Complaint".

In Count Two, Plaintiffs allege that the City discriminated against the Plaintiffs in the provision of municipal services in violation of 42 U.S.C. § 3604(b)[2] and 24 C.F.R. § 100.65(b)(4). Plaintiffs allege that the City impermissibly limited the municipal services available to the Plaintiffs because of their race, color, and/or national origin. *Id.* ¶ 23. In particular, Plaintiffs contend that the City has limited its provision of protection from adverse industrial uses and flooding, and its provision of adequate water drainage. *Id.* ¶ 24.

In Count Three, the Plaintiffs allege that discrimination in municipal services has rendered dwelling units unavailable to future residents of Cadillac Heights because of their race, color, and/or national origin, in violation of 42 U.S.C. § 3604(a). As an example, the Plaintiffs aver that the City has refused to provide flood protection for Cadillac Heights, and that ninety-six parcels of land currently zoned for single family residential use are in the 100-year flood plain, and the entire Cadillac Heights neighborhood is in the 800-year flood plain. *Id.* ¶ 33, 34. The City prohibits construction of dwelling units in a flood plain and, therefore, many parcels of land which would otherwise be "available" are rendered unavailable to potential future residents. *Id.* ¶ 34.

In Count Four, Plaintiffs allege discrimination in zoning and land use policies, in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d. Plaintiffs allege that the City's Development Services Department ("DSD"), which receives federal funds, is responsible for the administration of the City's zoning and land use policies and practices. *Id.* ¶ 41. Plaintiffs allege that DSD has denied them protection from adverse industrial uses because of

---

[2]42 U.S.C. §§ 3601-31 comprise the Fair Housing Act ("FHA").

their race, color, and/or national origin. *Id.* ¶ 43. Plaintiffs contend that in "predominantly white areas that are comparable with respect to the need for these services," DSD makes different and better zoning and land use decisions. *Id.* ¶ 44.

On January 15, 2004, the City filed its original Motion to Dismiss, which the Court granted in part and denied in part. *Lopez v. City of Dallas*, 3:03-CV-2223-M, 2004 U.S. Dist. LEXIS 18220 (N.D. Tex. Sept. 9, 2004) ("*Lopez I*"). The City filed a second Motion to Dismiss on October 22, 2004, which the Court denied. *Lopez v. City of Dallas*, 3:03-CV-2223-M, 2005 U.S. Dist. LEXIS 8863 (N.D. Tex. May 12, 2005) ("*Lopez II*").

The City filed its 12(b)(1) and 12(b)(6) Motions for Partial Dismissal on February 1, 2006, seeking dismissal of Plaintiffs' claims under § 3604 and § 100.65(b) in light of the Fifth Circuit's decision in *Cox v. City of Dallas*, 430 F.3d 734 (5th Cir. 2005). The City filed its Motion for Summary Judgment on February 3, 2006, and Plaintiffs responded. Both Plaintiffs and Defendant filed Motions to Strike, and Plaintiffs filed a Motion to Disregard New Arguments.

STANDARD OF REVIEW

*1. Rule 12(b)(1)*

The Court addresses the City's standing arguments under Fed. R. Civ. P. 12(b)(1). *See Krim v. PCOrder.com*, 402 F.3d 489, 493 (5th Cir. 2005). Rule 12(b)(1) requires dismissal if the court lacks jurisdiction over the subject matter of the plaintiff's complaint. Motions filed under Rule 12(b)(1) allow a party to challenge the subject matter jurisdiction of the district court, based

on the allegations on the face of the complaint. *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996). In ruling on a motion to dismiss under Rule 12(b)(1), the court may rely on (1) the complaint alone, presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts. *MCG, Inc. v. Great W. Energy Corp.*, 896 F.2d 170, 176 (5th Cir. 1990).

### 2. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion, the complaint must be liberally construed in favor of the plaintiffs, and all well-pled facts in the complaint must be taken as true. *Campbell v. Wells Fargo Bank,* 781 F.2d 440, 442 (5th Cir. 1980). Dismissal is only appropriate if "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing *Lowrey v. Texas A & M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir. 1997)). In deciding a motion to dismiss, a court does not evaluate the plaintiffs' likelihood of success; instead, a court only determines whether the plaintiffs have stated a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Plaintiffs "must give the defendant fair notice of the nature of the claim and the grounds upon which the claim rests." *Bates v. U.S. Small Bus. Assoc.*, No. 3:01-CV-1614-D, 2004 U.S. Dist.

LEXIS 23208, at *11 (N.D. Tex. Nov. 16, 2004) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002)).

*3. Rule 56 Motion for Summary Judgment*

Summary judgment is warranted when the facts and law, as reflected in the pleadings, affidavits, and other summary judgment evidence, show that no reasonable trier of fact could find for the nonmoving party as to any material fact. *Pourgholam v. Advanced Telemktg. Corp.*, No. 3:01-CV-2764-H, 2004 U.S. Dist. LEXIS 10659, at *2-3 (N.D. Tex. June 9, 2004) (citing Fed. R. Civ. P. 56; *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986)). "The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 322-25). Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).

The nonmovant is then required to go beyond the pleadings and designate specific facts that prove the existence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). That party may not rest on conclusory allegations or denials in its pleadings that are unsupported by specific facts. Fed. R. Civ. P. 56(e). The court must review all evidence in the record, giving credence to evidence favoring the nonmovant as

-6-

well as "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses" and disregarding the evidence favorable to the nonmovant that the jury is not required to believe. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 152 (2000). Further, "the court must draw all justifiable inferences in favor of the nonmovant." *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 338 (5th Cir. 2005).

In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists." *Lynch Props.*, 140 F.3d at 625. "If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir. 1991). However, in the absence of proof, a court will not conclude that the nonmoving party could prove the required facts. *Lynch Props.*, 140 F.3d at 625.

## ANALYSIS

*1. 42 U.S.C. § 3604(a)*

Defendant argues that the Plaintiffs do not have standing to pursue their claim under § 3604(a); that in light of *Cox*, Plaintiffs do not state a claim under § 3604(a); that Plaintiffs' claim under § 3604(a) is barred by limitations; and that Plaintiffs cannot show that any particular land was offered for sale or lease for construction of dwellings.

*a. Standing*

This Court addressed the City's standing argument in *Lopez I*. In that Opinion, the Court noted that the text of the FHA established standing to the full extent permitted by Article III of the United States Constitution. *Lopez I*, 2004 U.S. Dist. LEXIS 18220, at *10-12. Therefore, Plaintiffs need only show (1) an injury in fact, (2) a causal connection between the defendant's conduct and the alleged injury, and (3) a likelihood that the injury will be redressed by a favorable decision. *Id.* at *12. In *Lopez I*, this Court considered Plaintiffs' claim that the City violated § 3604(a) by making other plots of land in the Cadillac Heights neighborhood unavailable to third persons on the basis of race, and found that Plaintiffs' claim comported with Article III standing requirements. *Id.* at *14-17. *Cox* did not address Article III standing requirements, and does not change this Court's analysis on that point. The Court finds that Plaintiffs have standing to pursue their claim under § 3604(a).[3]

*b. Failure to State a Claim*

The City argues that, in light of *Cox*, Plaintiffs have failed to state a claim under § 3604(a). In *Lopez I*, this Court held that "by alleging that by zoning, tolerating pollution, and failing to provide flood protection, Defendant made dwellings unavailable to third parties, Plaintiffs have adequately pled that Defendant made dwellings unavailable to third persons."

---

[3]The City also states that Plaintiffs have no standing to pursue their claim under § 3604(b), but only argues that Plaintiffs "cannot and do not claim" that the City's alleged discriminatory services were connected with the sale or rental of dwellings. Although couched in jurisdictional terms, the City's argument is premised on the contention that Plaintiffs' claim is not cognizable under § 3604(b); therefore, the Court will analyze the City's argument as a motion to dismiss under Rule 12(b)(6), *infra*.

2004 U.S. Dist. LEXIS 18220, at *18. Based on *Cox*, the City claims that, because Plaintiffs have not pleaded that any particular land was offered for sale or lease for construction of residential dwellings or that any house would be built on such land, it fails to state a claim.

In *Cox*, the Fifth Circuit held that § 3604(a) does not apply to current homeowners whose complaint is that the value or habitability of their houses has been impaired, because such a complaint is not about "availability." 430 F.3d at 741. The *Cox* court did not directly address specifically the viability of claims by current owners claiming housing has been made unavailable to others, but the opinion is subject to the inference that such claims would be cognizable under § 3604(a). *Cf. id.* at 742 n.18 (noting in its list of "non-controlling" cases those which do not deal directly with § 3604(a), do not address the "availability" issue head-on, or deal with situations "where current owners are suing because houses have been made unavailable to others".) The *Cox* court granted summary judgment for the Defendants because Plaintiffs had not established a genuine issue of material fact as to whether (1) the alleged site was offered for sale for the construction of residential buildings, (2) housing would have been constructed on the site had defendants acted as plaintiffs wished, or (3) other land was available for housing. *See id.* at 744.

*Cox* does not contradict the Court's ruling in *Lopez I* with respect to stating a claim under § 3604(a). Therefore, as in *Lopez I*, the Court finds that Plaintiffs have adequately stated a claim under § 3604(a).

*c. Statute of Limitations*

The City argues that Plaintiffs' claim under § 3604(a) is barred by the two-year statute of limitations. 42 U.S.C. § 3613(a)(1)(A).[4] Plaintiffs argue that their action under § 3604(a) has not accrued due to the "continuing violation" doctrine. A party moving for summary judgment based on an affirmative defense "must establish beyond peradventure *all* of the essential elements" of that defense. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). Thus, the City has the burden to prove that Plaintiffs' § 3604(a) claim is barred by limitations. *Carper v. State Farm Lloyds*, 3:01-CV-1979-M, 2002 U.S. Dist. LEXIS 17485, at *4-5 (N.D. Tex. Sept. 13, 2002) (Lynn, J.).

The Supreme Court has held that "a continuing violation under the Fair Housing Act should be treated differently from one discrete act of discrimination. Statutes of limitations . . . are intended to keep stale claims out of the courts. Where the challenged violation is a continuing one, the staleness concern disappears." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380 (1982); *see also Davis v. Gen. Motors Acceptance Corp.*, 406 F. Supp. 2d 698, 707 (N.D. Miss. 2005) (Barbier, J.) ("[The view espoused in *Havens Realty*] comports with the notion that statutes designed to correct illegal discrimination are considered remedial, and should be construed to permit the fullest remedial effect."). To prove a continuing violation, a "plaintiff must demonstrate more than a series of discriminatory acts. He must show an organized scheme

---

[4]§ 3613(a)(1)(A) provides: "An aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice, or the breach of a conciliation agreement entered into under this title, whichever occurs last, to obtain appropriate relief with respect to such discriminatory housing practice or breach."

-10-

leading to and including the present violation, such that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action." *Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir. 1998); *see also Williams v. Parkland Health & Hosp. Sys.*, 3:02-CV-1938-M, 2004 U.S. Dist. LEXIS 13765, at *6-8 (N.D. Tex. July 19, 2004) (Lynn, J.). However, the Court must apply the continuing violation doctrine in light of the plain text of the statute. *See Moseke*, 202 F. Supp. 2d 492, 503 (E.D. Va. 2002) (citing legislative history stating that the "termination" verbiage in the FHA's statute of limitations is "intended to reaffirm the concept of continuing violations".).

"The distinction between single statutory violations and continuing violations is as much a matter of perspective and history as logic." *Hendrix v. City of Yazoo City*, 911 F.2d 1102, 1103 (5th Cir. 1990); *see also Davis*, 406 F. Supp. 2d at 707 ("[T]he Court notes that the murkiness of the continuing violation doctrine itself is problematic".). Despite its "murkiness", the Court recognizes certain clear-cut rules about the doctrine which emerge from the case law. First, "[a] plaintiff cannot use the continuing violation theory to resurrect claims . . . concluded in the past, even though its effects persist." *McGregor v. La. State Univ. Bd. of Sup'rs*, 3 F.3d 850, 867 (5th Cir. 1998); *see Link v. Village of Wadsworth*, No. 95 C 7075, 1996 U.S. Dist. LEXIS 5172, at *15-16 (N.D. Ill. Apr. 17, 1996). As a corollary to this rule, Plaintiffs must show at least one violation within the two years preceding the filing of their lawsuit for the Court to find a continuing violation. *See Moseke*, 202 F. Supp. 2d at 501; *Eldridge v. S. Methodist Univ.*, 3:03-CV-2393-M, 2005 U.S. Dist. LEXIS 1755, at *7 (N.D. Tex. Feb. 7, 2005) (Lynn, J.). Second, neutral policies that occurred within the two years preceding the filing of their lawsuit that give

-11-

effect to time-barred discriminatory conduct do not create a continuing violation. *See City of Hialeah v. Rojas*, 311 F.3d 1096, 1102 (11th Cir. 2002). In other words, the act that occurred within the two years preceding the filing of their lawsuit must be the type of act that violates the statute at issue. *Cf. United States v. Taigen & Sons, Inc.*, 303 F. Supp. 2d 1129, 1142 (D. Idaho 2003) ("[I]n order to be considered an 'act' of discrimination [under 42 U.S.C. § 3604(f)(3),] there must be a 'failure to design and construct.'").

The City argues that Plaintiffs' action accrued the moment they became aware that they had suffered an injury or had sufficient information to know that they had been injured, citing *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir. 1995); *see also Skelton v. Mobile Sys. Int'l, Inc.*, 3:98-CV-1254-M, 2000 U.S. Dist. LEXIS 4725, at *8-10 (N.D. Tex. Apr. 14, 2000) (Lynn, J.) (Title VII) (citing *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 474 (5th Cir. 1989); *Webb v. Cardiothoracic Surgery Ass'n*, 139 F.3d 532, 537 (5th Cir. 1998)). However, the text of the FHA precludes the City's argument here. The FHA's statute of limitations states that a plaintiff must file a lawsuit within two years after the "*occurrence* or the *termination* of an alleged discriminatory housing *practice*. . ." 42 U.S.C. § 3613(a)(1)(A) (emphasis added). The text of the statute permits the filing of an action within two years of the *termination* of a discriminatory housing practice, whether or not claimants became aware that they had suffered an injury or had sufficient information to know that they had been injured before the challenged practice ended. Thus, the text of the statute precludes the City's proposed application of *Piotrowski* in this case.

The controlling issue, then, is whether the Plaintiffs filed their action within two years of

-12-

the termination of the City's alleged discriminatory practice. *See Moseke*, 202 F. Supp. 2d at 502-03. In its Motion, the City asserts that because Plaintiffs purchased and resided in their homes between 1973 and 1985,[5] their claims are time barred, because the "very latest" any of the Plaintiffs could have asserted a claim would have been in or around 1987. Def. MSJ Br. at 42. In the Court's view, this argument misses the point. No matter when Plaintiffs bought their property, they may assert a claim within two years of the termination of the City's alleged discriminatory practice. The City has not shown beyond peradventure that Plaintiffs did not file their action within two years of the termination of the City's alleged discriminatory practice. As a result, the Court declines to dismiss Plaintiffs' § 3604(a) claim based on the statute of limitations.[6]

*d. No Evidence that Any Particular Land Was Offered for Sale or Lease for Construction of Dwellings*

The City claims that Plaintiffs have no evidence that any particular land was offered for sale or lease for construction of residential dwellings, or that housing would be constructed on that land, as it contends *Cox* requires to support a section 3604(a) claim.

---

[5]The City states that Plaintiffs purchased their homes between 1973 and 1985, citing each Plaintiff's Response to the City's First Set of Interrogatories. Def. MSJ Br. at 42. However, in Pedro Lopez's Response, he states that he moved to his residence in Cadillac Heights in 1987. The precise year that Lopez moved does not affect the Court's analysis.

[6]Of course, notwithstanding this ruling, the City may attempt to prove at trial that Plaintiffs' § 3604(a) claim is time-barred. *See Davis*, 406 F. Supp. 2d at 707 ("If further testing of the pleadings demonstrates that plaintiffs cannot or do not challenge an over-arching practice to which the continuing violation doctrine would apply, some of their claims may well be time-barred.")

In *Cox*, the Fifth Circuit granted summary judgment as to the plaintiffs' § 3604(a) claim because they had not established a genuine issue of material fact as to whether the alleged site was offered for sale for the construction of residential buildings, that housing would have been constructed on the site had the defendant acted as the plaintiffs wished, or that other land was not available for housing. 430 F.3d at 744. *Cox* thus requires Plaintiffs, in order to sustain their claim under § 3604(a), to show that because of the City's actions, land in Cadillac Heights that otherwise would have been used for housing was not so used.

In their Response, Plaintiffs argue that the City did not discharge its summary judgment burden to demonstrate the absence of a genuine issue of material fact based on the depositions, answers to interrogatories, admissions, and affidavits, citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Russ v. International Paper Co.*, 943 F.2d 589, 591-92 (5th Cir. 1991); and *Clark v. Coats & Clark, Inc.* 929 F.2d 604, 607-08 (11th Cir. 1991). In its Motion,[7] the City stated that, when a summary judgment movant does not have the burden at trial on an issue, it can meet its summary judgment obligation by pointing to the absence of evidence to support the non-movant's claim, citing *Celotex*, 477 U.S. at 325.

In *Clark*, the Eleventh Circuit addressed the burden on the movant in relation to a motion for summary judgment, specifically addressing *Celotex*:

> The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment. *Celotex* did not change the general rule. *Celotex* simply holds that under certain circumstances the movant may meet its Rule 56

---

[7]The City did not address this argument in its Reply.

burden without negating an element of the non-moving party's claim and that
under such circumstances it is sufficient to point to materials on file that
demonstrate that the party bearing the burden of proof at trial will not be able to
meet that burden. Even after *Celotex* it is never enough simply to state that the
non-moving party cannot meet its burden at trial.

*Clark*, 929 F.2d at 608.[8] In *Russ*, the Fifth Circuit agreed. "Simply filing a summary judgment

motion does not immediately compel the party opposing the motion to come forward with

evidence demonstrating material issues of fact as to every element of its case."[9] 943 F.2d at 591;

*Ashe v. Corley*, 992 F.2d 540, 543 (5th Cir. 1993);[10] *accord Celotex*, 477 U.S. at 328 ("The

movant must discharge the burden the Rules place upon him: It is not enough to move for

summary judgment without supporting the motion in any way or with a conclusory assertion that

---

[8]The Eleventh Circuit, sitting *en banc*, reaffirmed this reasoning in *United States v. Four Parcels of Real Property*.

> Justice Rehnquist's opinion in *Celotex* does not explain exactly how the moving party may show the court that the nonmoving party will be unable to prove its case. In this circuit, "even after Celotex, it is never enough simply to state that the non-moving party cannot meet its burden at trial." Instead, the moving party must point to specific portions of the record in order to demonstrate that the nonmoving party cannot meet its burden of proof at trial.

*Four Parcels*, 941 F.2d 1428, 1438 n.19 (11th Cir. 1991) (*en banc*) (citations omitted).

[9]The *Russ* court specifically adopted *Clark*: "That [the idea that summary judgment is appropriate anytime a party fails to establish the existence of an element essential to his case and on which he will bear the burden of proof at trial] is a common misinterpretation of the Supreme Court decisions is amply demonstrated in the thorough opinion of Judge Cox, relying to some extent on 5th Circuit cases, in *Clark v. Coats & Clark, Inc.* The law of the Fifth Circuit and the Eleventh Circuit is identical in this regard." *Russ*, 943 F.2d at 591 (citation omitted).

[10]"It is not enough for the moving party to merely make a conclusory statement that the other party has no evidence to prove his case." *Ashe*, 992 F.2d at 543.

the plaintiff has no evidence to prove his case.") (White, J., concurring);[11] *Windon Third Oil &*

*Gas Drilling P'ship v. FDIC*, 805 F.2d 342, 346 n.7 (10th Cir. 1986); *Marshall Indep. Sch. Dist.*

*v. U.S. Gypsum Co.*, 790 F. Supp. 1291, 1299-1300 (E.D. Tex. 1992);[12] *Anderson v. Radisson*

*Hotel Corp.*, 834 F. Supp. 1364, 1369 (S.D. Ga. 1993); *Technip Offshore Contractors v.*

*Williams Field Servs.*, H-04-0096, 2006 U.S. Dist. LEXIS 12256, at *50-51 (Mar. 7, 2006)

(Rosenthal, J.); *but see Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (Rosenthal, J., by

designation).[13] "[B]efore the non-moving party is required to produce evidence in opposition to a

---

[11]In *Willis v. Roche Biomedical Labs., Inc.*, the Fifth Circuit characterized Justice White's concurring opinion in *Celotex* as the "majority fifth vote". 21 F.3d 1368, 1372 (5th Cir. 1994).

[12]In *Marshall*, Judge Justice described the movant's burden:

Even where the non-moving party has the burden of persuasion on an issue, the summary judgment movant still has the initial burden of showing the absence of a genuine issue of material fact. It is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove its case. If there is literally no evidence in the record, the moving party may demonstrate this by reviewing for the court the admissions, interrogatories, and other exchanges between the parties that are in the record. If the moving party has not fully discharged this initial burden of production, its motion for summary judgment must be denied, and the court need not consider either any evidence submitted by the non-moving party or whether the moving party has met its ultimate burden of persuasion that summary judgment should be granted in its favor.

*Marshall*, 790 F. Supp. at 1299-1300.

[13]The panel in *Malacara* found that, because a motion for summary judgment identified the six elements of the claim at issue and argued that the movant was entitled to summary judgment "because [the non-movant] cannot prove any of these elements much less all of them", the non-movant was put on notice that he needed to come forward with evidence. 353 F.3d at 404. To the extent that *Malacara* holds that a conclusory statement that the non-movant cannot prove its case satisfies the movant's burden on summary judgment, it is inconsistent with *Ashe*, an earlier Fifth Circuit case. This Court must follow *Ashe* as the earlier opinion. *See Texaco Inc. v. La. Land & Exploration Co.*, 995 F.2d 43, 44 (5th Cir. 1993).

motion, the moving party must first satisfy its obligation of demonstrating that there are no

factual issues warranting trial." *Russ*, 943 F.2d at 592. A party must identify those portions of the

pleadings, depositions, answers to interrogatories, and admissions on file, together with

affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at

592 (citing *Celotex*, 477 U.S. at 323); *accord Carmona v. Toledo*, 214 F.3d 124, 132 (1st Cir.

2000);[14] *Mares v. Conagra Poultry Co.*, 971 F.2d 492, 494 (10th Cir. 1992); *Nissan Fire &*

*Marine Ins. Co. v. Hitachi Data Sys. Corp.*, 210 F.3d 1099, 1105-06 (9th Cir. 2000).[15]

Here, without any references to evidence, interrogatories, or portions of depositions, the

---

[14]"Where the moving party lacks the ultimate burden of persuasion at trial, its initial
burden of production is conventionally satisfied in one of two ways. The movant may
affirmatively produce evidence that negates an essential element of the non-moving party's
claim. Alternatively, the moving party may point to evidentiary materials already on file – such
as answers to interrogatories, affidavits, or portions of depositions – that demonstrate that the
non-moving party will be unable to carry its burden of persuasion at trial." *Carmona*, 214 F.3d at
132.

[15]One commentator stated that:

If defendants seek to avoid the delay and expense of trial, at a minimum
they must shoulder the expense of doing sufficient discovery to show that the
plaintiff does not have a case. Discovery is as integral a part of the Federal Rules
as summary judgment. There is little merit in an interpretation of summary
judgment procedure that would encourage parties not to use the discovery rules, in
hopes of then invoking summary judgment to force an opponent to reveal his case.
Unfortunately, this point does not emerge clearly from the majority opinion in
[*Celotex*]. The focus should not be merely on the elapsed time available for
discovery but, more importantly, on the discovery efforts actually made by a
moving party before seeking summary judgment on the ground that the record is
devoid of evidence to establish an essential element of the nonmoving party's
case.

Melissa L. Nelken, *One Step Forward, Two Steps Back: Summary Judgment after Celotex*, 40
Hastings L.J. 53, 66 (1988).

City asserts in its summary judgment brief that (1) there is no evidence that any particular land was offered for sale or lease for construction of residential dwellings, (2) Plaintiffs recognize that construction of homes in much of the area is improbable, (3) at most, the City made some portions of land unavailable for some future development of residential housing units.[16] Because the City makes only conclusory assertions that Plaintiffs cannot prove their case, it cannot prevail on its Motion for Summary Judgment directed to this claim.[17] *See Ashe*, 992 F.2d at 543.

Even if the City's burden could be discharged through only conclusory assertions, it has

---

[16]The Court declines to consider the City's Reply in determining whether it discharged its summary judgment burden. *See Linbrugger v. Abercia*, 363 F.3d 537, 541 n.1 (5th Cir. 2004) (holding that an argument made for the first time in a reply brief is waived). If a movant were allowed to perfect its summary judgment burden through a reply brief, the movant would effectively deny the non-movant a chance to respond. *Cf. Springs Indus., Inc. v. Am. Motorists Ins. Co.*, 137 F.R.D. 238, 239 (N.D. Tex. 1991) (Fitzwater, J.) ("Of equal importance is the rule that the nonmovant should be given a fair opportunity to respond to a motion. This principle informs the court's practice of declining to consider arguments raised for the first time in a reply brief. It follows that a reply brief that presents dispositive evidence by way of new affidavits and exhibits deprives the nonmovant of a meaningful opportunity to respond.") Because the Court does not consider the City's Reply brief in determining whether the City carried its summary judgment burden, the Court strikes the appendix to the City's Reply brief.

[17]In "The City's Response to Plaintiffs' Motion to Strike City's Reply Appendix and Arguments," the City argues that it proffered sufficient evidence to discharge its summary judgment burden, specifically noting that it "attached a two-volume appendix containing nearly 500 pages, including among other things deposition transcripts, interrogatory responses, and affidavit testimony." Def. Resp. to Pl. Mot. to Strike at 3. Argument directed to the City's summary judgment burden is properly addressed in the briefs supporting a motion for summary judgment, not in response to a motion to strike. Even if the Court were to indulge such argument, it is inapposite. When evidence exists in the summary judgment record but the party fails to refer to it in his brief, that evidence is not properly before the court. *See Malacara*, 353 F.3d at 405 (5th Cir. 2003); *see also Narasirisinlapa v. SBC Communic'ns, Inc.*, 3:05-CV-1-M, 2006 U.S. Dist. LEXIS 13758, at *10 n.4 (N.D. Tex. Mar. 29, 2006) (Lynn, J.). In the section of the City's brief supporting its Motion for Summary Judgment addressing its no evidence argument directed to Plaintiffs' § 3604(a) claim, the City cites to statutes, case law, and pleadings, but does not cite to its appendix. Def. MSJ Br. at 32-33.

not argued that the Plaintiffs cannot produce evidence that land in Cadillac Heights that was not

used for housing would have been available as housing for future residents but for the City's

actions. To prove their ultimate burden at trial, Plaintiffs need not show that any particular land

was offered for sale or lease. *See Cox*, 430 F.3d at 744 (suggesting that plaintiffs may show either

that a particular site was offered for sale for the construction of residential buildings, or that

housing would have been constructed on the site had the defendant acted as the plaintiffs

wished). As a result, even if the Plaintiffs have no evidence that any particular land was offered

for sale or lease, such a failing does not mandate judgment for the City. Even if the Court

assumes that construction of new homes in the area is improbable, such a conclusion does not

foreclose satisfaction of Plaintiffs' burden. Finally, although the City argues that, at most, it made

some portions of land unavailable for some future development of residential housing units, the

Court cannot assume that such a fact is true without citation to competent summary judgment

evidence. *Lynch Props.*, 140 F.3d at 625. The Court finds that the City has not discharged its

burden, and declines to dismiss Plaintiff's claim under § 3604(a).[18]


*2. 42 U.S.C. § 3604(b)*

 Similarly to its § 3604(b) positions, Defendant argues that the Plaintiffs do not have

---

[18]Similarly, the City argues in a separate section that Plaintiffs cannot recover on any of their claims because "Plaintiffs have no evidence of any actual injury arising from the alleged conditions of there [sic] neighborhood or that any injuries are connected to a City policy or custom." Def. MSJ Br. at 44-45. However, notwithstanding this conclusory assertion, the City has not proven this contention. Because the City has not carried its burden on its Motion for Summary Judgment, the Court will not dismiss Plaintiffs' claims based on this argument. *See Ashe*, 992 F.2d at 543.

standing to pursue their claim under § 3604(b);[19] that in light of *Cox*, Plaintiffs do not state a

claim under § 3604(b); that Plaintiffs' claim under § 3604(b) is barred by limitations; and that

Plaintiffs cannot show that any particular land was offered for sale or lease for construction of

dwellings.

### a. Failure to State a Claim

Plaintiffs contend that Defendant violated § 3604(b)[20] by providing different and inferior

municipal services to the dwellings in Cadillac Heights, because of the race of its residents.

Defendant argues that Plaintiffs' § 3604(b) claim should be dismissed because to be actionable,

allegedly discriminatory services must be in connection with the sale or rental of a dwelling. In

*Lopez I*, this Court found that the "in connection therewith" language in § 3604(b) refers to the

services "associated with a dwelling". 2004 U.S. Dist. LEXIS 18220, at *23-27 (citing 24 C.F.R.

§ 100.65; *Chevron v. Natural Res. Defense Council*, 467 U.S. 837, 842-43 (1984)). However, in

*Cox*, the Fifth Circuit held that the "in connection therewith" language referred to services

connected to the sale or rental of a dwelling. 430 F.3d at 745. As a result, the *Cox* court affirmed

the lower court's dismissal of the plaintiffs' claim under § 3604(b), because the plaintiffs did not

assert a connection between the alleged discrimination -- defendant's failure to enforce zoning

---

[19]The Court addressed the City's standing argument above.

[20]42 U.S.C. § 3604(b) provides:

It shall be unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

laws that prevent illegal dumping -- and the sale or rental of a dwelling; instead, those plaintiffs alleged that the value, or "habitability", of their houses had decreased. *Id.* at 746. In dicta, the *Cox* court opined that § 3604(b) might encompass the claim of a current owner or renter for attempted and unsuccessful discrimination relating to the initial sale or rental, or for actual or constructive eviction. *Id.* at 746-47.

This Court must reconsider its previous ruling in light of *Cox*, and must consider whether Plaintiffs have alleged discrimination relating to an initial sale or rental or actual or constructive eviction from their homes.

Plaintiffs allege that the City discriminated against them in (1) protection from adverse effects of industrial uses, (2) protection from flooding, and (3) the provision of adequate streets, storm water drainage facilities, and parks. Although discrimination in the provision of such services may diminish property values, such discrimination does not relate to the initial or other sale or rental of Plaintiffs' dwellings, and Plaintiffs have not claimed that such discrimination resulted in actual or constructive eviction from their homes. Those failings are fatal under *Cox*. Therefore, the Court **DISMISSES** Plaintiffs' claims under § 3604(b).

*3. 42 U.S.C. § 2000d*

The City argues that the Court should grant its Motion for Summary Judgment as to Plaintiffs' § 2000d claim because (1) the claim is barred by the two-year statute of limitations,[21]

---

[21]In its brief, the City addresses Plaintiffs' § 1981, § 1983, and § 2000d claims together for the purpose of arguing limitations. The Court will accordingly consider all three statutes together in § 3(a), *infra*.

and (2) Plaintiffs have no evidence that the City applied or withheld, with discriminatory intent, federal funds of which they were intended beneficiaries.

### a. Statute of Limitations

The City claims that Plaintiffs' § 1981, § 1983, and § 2000d claims are barred by the statute of limitations. To prevail, the City must establish as a matter of law that Plaintiffs' claims were asserted after the limitations period ran. *See Fontenot*, 780 F.2d at 1194; *accord Helmon v. IRS*, 3:00-CV-809-M, 2000 U.S. Dist. LEXIS 17628, at *6 (N.D. Tex. Nov. 6, 2000) (Lynn, J.) ("A movant who has the burden of proof at trial must submit evidence to establish every essential element of its claim or affirmative defense."). There is a two-year statute of limitations for § 2000d claims. *See Drayden v. Needville Indep. Sch. Dist.*, 642 F.2d 129, 132 (5th Cir. 1981); *Dews v. Town of Sunnyvale*, 109 F. Supp. 2d 526, 563 (N.D. Tex. 2000) (Buchmeyer, C.J.). The City contends that §§ 1981 and 1983 also are subject to a two-year statute of limitations; Plaintiffs do not argue otherwise. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 381-82 (2004); *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000); *Ali v. Higgs*, 892 F.2d 438, 439 (5th Cir. 1990).

The City argues that (1) any claims based on inadequate streets, drainage, and parks are barred, because these conditions were "the same or worse" when Plaintiffs bought their homes; (2) the Plaintiffs claim the same injuries and grievances as those asserted in *Miller v. City of Dallas*, which was filed in December 1998, and as a result, Plaintiffs "must have been aware" of their injuries at the time the *Miller* plaintiffs were aware of them; (3) Plaintiffs should have been aware that there was no levee to protect the neighborhood from flooding of the Trinity River; (4)

in 1987, the City adopted the zoning district that encompasses the residences at issue; therefore,

to the extent that Plaintiffs allege any injuries based on discrimination arising from such zoning,

those claims are barred; (5) the City issued Texas By Products a Special Use Permit ("SUP") in

1997, so claims based on the SUP are barred; (6) any claims based on the existence of open and

obvious pre-existing businesses, landfills, and junkyards are barred by limitations; and (7) any

claims of "systemic maladministration" are barred because Plaintiffs were aware of such before

September 29, 2001.

The City must present unassailable evidence that shows, beyond peradventure, that it will

prevail on its statute of limitations defense at trial. *Fontenot*, 780 F.2d at 1194; *Helmon*, 2000

U.S. Dist. LEXIS 17628, at *6. However, the City has presented no evidence that the conditions

of the streets, drainage, and parks were "the same or worse" when Plaintiffs bought their homes

as they were when Plaintiffs brought this lawsuit;[22] therefore, the Court declines to dismiss

Plaintiffs' § 2000d claim regarding the condition of the streets, drainage, and parks based on the

statute of limitations.

---

[22]In its statement of facts, the City cited evidence that it stated showed that (1) the City
has performed regular maintenance activities on the streets and drainage ditches, as well as
responded to service calls and repairs, (2) the City provides funding to street improvements, (3)
the City improved eight streets in the Cadillac Heights neighborhood in 1986, (4) the streets in
Cadillac Heights are in no worse disrepair than the streets located in other similarly situated
predominantly white residential neighborhoods, and (5) the City provided for the addition of
curbs, gutters, sidewalks, and alleys for any residential street pursuant to a petition signed by
two-thirds of the property owners on the street. The City also cited to the affidavit of David
Dybala, Director of the Department of Public Works and Transportation for the City, which
stated that infrastructure *existed* for several years, without opining on the condition or change in
the condition of that infrastructure. Def. App. at 456. None of this evidence establishes that the
conditions of the streets, drainage system, and parks in Plaintiffs' neighborhood were "the same
or worse" when Plaintiffs bought their homes.

The City presents evidence that the plaintiffs in *Miller*, who were also Cadillac Heights residents, had notice of their injuries when they filed suit in December 1998. Although that is evidence that the Plaintiffs had actual or constructive knowledge of the City's actions and inactions at that time, this evidence is not conclusive of knowledge which establishes that limitations has run. *See Aspex Eyewear, Inc. v. E'lite Optik, Inc.*, 3:98-CV-2996-D, 2002 U.S. Dist. LEXIS 14834, at *85 (N.D. Tex. May 8, 2002) (Fitzwater, J.) ("[A specific piece of evidence], while certainly probative [of the element the movant sought to prove], does not establish [that element] to the degree necessary to warrant summary judgment."); *Pellerin v. Xspedius Communic'ns LLC*, 04-1647, 2005 U.S. Dist. LEXIS 33479, at *3 n.3 (W.D. La. Dec. 5, 2005) (defining "beyond peradventure" as "beyond doubt").

Similarly, the City argues that because it can show that Plaintiffs lived in and owned homes in Cadillac Heights during a series of floods that occurred between 1989 and 1991, it has established beyond peradventure that Plaintiffs were aware, or should have been aware, that there was no levee to protect the neighborhood from flooding. Although such evidence supports that finding, the City has not established it conclusively.

The City does, however, identify specific acts that it claims cannot form the basis of an action due to limitations. Specifically, the City states that claims based on the following are barred: (1) the 1987 adoption of the zoning district that encompasses the residences at issue, (2) the 1997 provision of an SUP for Texas By Products, and (3) specific businesses[23] that existed in

---

[23]The list includes Dixie Metals, Valcar/Darling Industries, American Lone Star Rendering, Southwest Tallow and Grease, Cash Brothers Packing Company, True Hadal, Columbia Meat Packing Company, Dallas City Packing Company, Dal Chrome, NL Industries, and Automobile Salvage Yard.

Cadillac Heights prior to 2001. The zoning district that encompasses Plaintiffs' residences was adopted by the City in 1987,[24] although the effects of such zoning may continue today. Even if the Plaintiffs show a pattern of discrimination over the years, if such discrimination was evident long before Plaintiffs sued, Plaintiffs cannot reach back and base their suit on conduct that occurred outside the limitations period. *See Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir. 1999). Even if the effects of this zoning decision persist, Plaintiffs cannot use present effects to challenge zoning decisions completed in the past. *McGregor*, 3 F.3d at 867. The analysis is the same for the issuance of the SUP for Texas By Products in 1997. The *granting* of the SUP, then, cannot form the basis of Plaintiff suit.[25] *Id.* Such a claim is barred by limitations. The City has provided evidence that the following businesses have existed in Cadillac Heights since before Plaintiffs moved into Cadillac Heights: the City's wastewater treatment plant, the Dixie Metals and National Lead Industries lead smelters, the Darling International (formerly Valcar) animal rendering plant, and the Dallas Packing Company. Therefore, due to limitations, Plaintiffs cannot base their claims on the *existence* of these businesses, but they may base their claims on a failure by the City to eliminate nuisances caused by these businesses.

Finally, the City argues that any claims of "systemic maladministration" are barred because Plaintiffs were aware of such claims before September 29, 2001. The Court recognizes

---

[24]The Ordinance adopting the zoning district that encompasses the Plaintiffs' residences is part of the City's Appendix. Def. App. at 93-128.

[25]However, other claims related to Texas By Products are not barred by limitations. For instance, Plaintiffs allege that "The City continues to allow [Texas By Products] to operate even though the [SUP] has expired and the plant has more than doubled the size of operation."

that Plaintiffs' action based on "systemic maladministration" accrued the moment they became

aware that they had suffered an injury or had sufficient information to know that they had been

injured. *See Piotrowski*, 51 F.3d at 516; *Skelton*, 2000 U.S. Dist. LEXIS 4725, at \*8-10.

However, Plaintiffs can still rely on conduct that occurred within the recent past, and those

claims can be submitted to the jury. *See Hardin*, 167 F.3d at 345. The Court refuses to dismiss

Plaintiffs' claims based on "systemic maladministration", because it is not clear that those are

time-barred.

The Court grants the City's Motion for Summary Judgment as to those claims under 42

U.S.C. §§ 1981, 1983, and 2000d based on (1) the 1987 zoning of Cadillac Heights, (2) the

granting of the SUP to Texas By Products in 1997, and (3) the presence in Cadillac Heights of

the City's wastewater treatment plant, the Dixie Metals and National Lead Industries lead

smelters, the Darling International (formerly Valcar) animal rendering plant, and the Dallas

Packing Company. Otherwise, the Court denies the City's Motion to dismiss Plaintiffs' claims

under § 1981, § 1983, and § 2000d as time-barred.

*b. No Evidence That the City Applied or Withheld, With Discriminatory Intent, Federal Funds of Which Plaintiffs Were Intended Beneficiaries*

The City argues that the Court should grant summary judgment because "Plaintiffs have

no evidence that the City applied or withheld, with discriminatory intent, federal funds of which

they were the intended beneficiaries." Def. MSJ Br. at 30. To recover under § 2000d, Plaintiffs

must show that the City discriminated against them on the basis of race, the discrimination was

intentional, and the discrimination was a substantial or motivating factor for the City's actions.

*Miller v. City of Dallas*, 3:98-CV-2955-D, 2002 U.S. Dist. LEXIS 2341, at *9 (N.D. Tex. Feb.

14, 2002) (Fitzwater, J.). In *Miller*, the court explained what factors to consider when

determining whether intentional discrimination exists:

> Because direct evidence of discriminatory purpose is rarely available,
> courts must make a sensitive inquiry into such circumstantial and direct evidence
> of intent as may be available. The court must therefore look at the totality of the
> relevant evidence to determine whether invidious discriminatory purpose was a
> motivating factor for the decision. In making this determination, the court is
> guided by a non-exhaustive list of factors. The so-called *Arlington Heights* factors
> include (1) the discriminatory effect of the official action, (2) the historical
> background of the decision, (3) the specific sequence of events leading up to the
> challenged decision, (4) departures from the normal procedural sequence, (5)
> departures from the normal substantive standards, and (6) the legislative or
> administrative history of the decision. When a court is faced with an aggregation
> of many decisions made by different administrators[,] the impact or effect of the
> choices made is an important starting point in determining purposeful
> discrimination. The inquiry is a practical one which is designed to determine
> whether the decisionmaker's actions could not reasonably be explained without
> reference to racial concerns. To establish discriminatory intent does not require
> proof that discrimination is the sole purpose behind each failure to equalize
> services. It is, rather, the cumulative evidence of action and inaction which
> objectively manifests discriminatory intent. There must be a correlation between
> municipal service disparities and racially tainted purposiveness to mandate a
> finding of discriminatory intent. Although official action is not necessarily
> unconstitutional because it has a racially disproportionate impact, the size of the
> disparity and the nature of the practice at issue can alone give rise to an inference
> of discriminatory intent. Courts have found the magnitude of the disparities in
> municipal services to be explicable only on racial grounds.

*Id.* at *10-14.[26] However, instead of presenting a nuanced discussion explaining why Plaintiffs

had no evidence of intentional discrimination, the City simply proclaimed, without pointing to

---

[26]*Miller* cites *Vill. of Arlington Heights v. Metro Hous. Dev. Corp.*, 429 U.S. 252, 265-66
(1977); *Clients' Council v. Pierce*, 711 F.2d 1406, 1409 (8th Cir. 1983); *Ammons v. Dade City,
Fla.*, 783 F.2d 982, 987 (11th Cir. 1986); *Dowdell v. City of Apopka*, 698 F.2d 1181, 1186 (11th
Cir. 1983); and *Jim Sowell Constr. Co. v. City of Coppell, Tex.*, 61 F. Supp. 2d 542, 546 (N.D.
Tex. 1999).

any support, that Plaintiffs had no evidence that the City applied or withheld, with discriminatory intent, federal funds of which they were the intended beneficiaries.[27] The City did not discharge its initial summary judgment burden. *See Ashe*, 992 F.2d at 543. As a result, the Court denies the City's Motion for Summary Judgment as to Plaintiffs' § 2000d claim.

*4. 42 U.S.C. § 1981, Equal Protection, 42 U.S.C. § 1983*

The City argues that the Court should grant summary judgment as to Plaintiffs' claim under § 1981 because § 1981 does not provide a cause of action against local governmental entities. Second, the City argues that the Court should grant its motion as to Plaintiffs' § 1983

---

[27]In the section of the City's brief supporting its Motion for Summary Judgment addressing its argument that Plaintiffs have no evidence of racially discriminatory intent, the City cites case law, but does not cite to anything in the record to support its contentions. *See* Def. MSJ Br. at 30-31.

In deciding whether the City carried its summary judgment burden, the Court will not consider the facts only cited in the "Factual Context" section of the City's brief that are not referred to in the legal argument sections. The City made numerous legal arguments in its brief, including (1) Plaintiffs cannot prove a discriminatory custom necessary to sustain their claim under § 1981; (2) Plaintiffs cannot prove unequal treatment to similarly situated persons necessary to sustain their claim under § 1981; (3) Plaintiffs cannot prove discriminatory intent or purpose necessary to sustain a claim under §§ 1981 and 2000d; (4) Plaintiffs cannot prove that any particular land was offered for sale or lease for construction of residential dwellings necessary to sustain a claim under § 3604(a); (5) Plaintiffs cannot prove a set of facts to sustain a claim under § 3604(b); (6) Plaintiffs' claims are time-barred; and (7) Plaintiffs have no evidence of injury. Especially in light of the complexity of the argument, the City cannot require the Court to determine, on its own, which facts support each legal argument. *See Fouce v. Lowe's Home Improvement Ctr., Inc.*, 1:04-cv-416-LJM-WTL, 2005 U.S. Dist. LEXIS 38332, at *19 n.6 (S.D. Ind. Dec. 22, 2005); *see also United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991); *Glover v. City of Dallas*, 3:04-CV-917-M, 2006 U.S. Dist. LEXIS 27789, at *10 n.4 (N.D. Tex. May 10, 2006) (Lynn, J.). In determining whether the City carried its summary judgment burden, the Court considers only those facts explicitly linked to its argument that the Plaintiffs have no evidence that the City applied or withheld, with discriminatory intent, federal funds of which they were the intended beneficiaries.

claim based on the Equal Protection Clause, and Plaintiffs' claim under § 1981, because they have no evidence to show that the City, by an official policy or custom, deprived them of any constitutionally or federally vested rights, or engaged in disparate treatment or application of those rights or laws, with discriminatory motivation.[28]

*a. 42 U.S.C. § 1981*

In its brief, the City argues § 1981 does not provide a separate cause of action against local government entities, citing *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989); *see also Jackson v. Dallas Indep. Sch. Dist.*, No. 3:98-CV-1079-D, 1999 U.S. Dist. LEXIS 1109, at *8 (N.D. Tex. Feb. 1, 1999) (Fitzwater, J.) ("Absent clear evidence from Congress to the contrary, the court declines to hold that the addition of § 1981(c) overruled the holding of *Jett*.") Noting that Plaintiffs did not address this argument in their Response, the Court concludes that *Jett* and *Jackson* establish that § 1981 does not provide a basis for Plaintiffs' claim and thus **DISMISSES** Plaintiffs' claims under § 1981.[29]

---

[28]The City also argues that these claims are barred by limitations. This argument was addressed above.

[29]Section 1983 comprises the sole remedy for Plaintiffs against state actors who or which purportedly violated their rights under § 1981. *See Jackson*, 1999 U.S. Dist. LEXIS 1109, at *6 n.3. However, Plaintiffs did not assert their § 1981 claim through § 1983, although they did assert their Fourteenth Amendment Equal Protection claim through § 1983. *See* Pl. Compl. at 2 ("The City discriminates against plaintiffs on the basis of race, color, and national origin in violation of the equal protection provision of the 14th Amendment enforceable through 42 U.S.C. § 1983. The City's discrimination in the provision of municipal services also violates the full and equal benefit of all laws and proceedings provision of 42 U.S.C. § 1981.")

*b. Equal Protection*

The City first argues, citing *Samaad v. City of Dallas*, 940 F.2d 925, 941-42 (5th Cir.

1991), that this Court should dismiss Plaintiff's § 1983 claim based on the Equal Protection

Clause because, in their Complaint, Plaintiffs only compared the City's services in Cadillac

Heights to "white areas that are comparable with respect to the need for [municipal] services",

rather than "similarly situated" neighborhoods. This Court addressed a similar argument in *Lopez

II*. As this Court stated in *Lopez II*, in light of *Swierkiewicz v. Sorema N.A.*, any failure to identify

a similarly situated non-minority community at this point in the litigation is not fatal to Plaintiffs'

claim. *See Lopez II*, 2005 U.S. Dist. LEXIS 8863 at \*11-12 (citing *Swierkiewicz*, 534 U.S. 506,

513 (2002)). The Court declines to dismiss Plaintiff's § 1983 claim based on the Equal

Protection Clause due to any failure to plead a specific similarly situated non-minority

neighborhood.

To prevail on their § 1983 claim based on the Equal Protection Clause, Plaintiffs must

show that similarly situated persons "unfairly enjoy benefits that [Plaintiffs] do not or escape

burdens to which [they] are subjected". *See Samaad*, 940 F.2d at 941; *Wilson v. Brestrup*, 3:05-

CV-729-M, 2006 U.S. Dist. LEXIS 17912, at \*8 (N.D. Tex. Apr. 10, 2006) (Lynn, J.). The City

argues that Plaintiffs have no evidence to prove the existence and disparate treatment of a

similarly situated white neighborhood. However, beyond this conclusory assertion, the City has

not proven this assertion. As a result, it has not carried its burden on its Motion for Summary

Judgment, and the Court will not dismiss Plaintiffs' claim based on this argument. *See Ashe*, 992

F.2d at 543.

Similarly to their § 2000d claim, to prevail on their § 1983 claim based on the Equal

-30-

Protection Clause, Plaintiffs must show racially discriminatory intent or purpose. *See Arlington Heights*, 429 U.S. at 265; *Miller*, 2002 U.S. Dist. LEXIS 2341, at \*10-14. The City argues that the Plaintiffs cannot show such intent. However, despite its assertion that "[t]here is no evidence here that the City acted with racially discriminatory intent in its treatment of the residents in Cadillac Heights", the City has not proven this contention. Because the City has not carried its burden on its Motion for Summary Judgment, the Court will not dismiss Plaintiffs' claim based on this argument. *See Ashe*, 992 F.2d at 543.

### 5. *The City's Motion to Strike*

The Court would have reached the same conclusion whether or not it considered the summary judgment evidence to which the City objected. As a result, the Court **DENIES** the City's Motion to Strike as moot.

### 6. *Plaintiffs' Motion to Strike and Motion to Disregard New Arguments in the City's Reply Brief*

The Court **GRANTS** Plaintiffs' Motion to Strike, and **STRIKES** the Appendix to the City's reply brief. *See Dethrow v. Parkland Health Hosp. Sys.*, 204 F.R.D. 102, 104 (N.D. Tex. 2001) (Fitzwater, J.).[30] The Court considered only the arguments in the City's Reply Brief that were not new, thus, the Court **GRANTS** Plaintiffs' Motion to Disregard New Arguments in the City's Reply Brief.

---

[30]The Court **DENIES** the City's Motion for Leave to File a Supplemental Appendix, filed April 25, 2006, asserted in response to Plaintiffs' Motion to Strike.

*7. Future Motions to Dismiss*

Defendant has filed three motions to dismiss, which the Court has addressed with extensive opinions. The Court will not permit further motions to dismiss, except for motions directed to new pleadings.

CONCLUSION

The City's Motion to Dismiss is **GRANTED IN PART**; the Court dismisses Plaintiffs' claim under § 3604(b). The City's Motion to Dismiss is otherwise **DENIED**. The City's Motion for Summary Judgment is **GRANTED IN PART**; the Court dismisses Plaintiffs' claim under § 1981 in its entirety, and dismisses Plaintiffs' § 2000d claim and § 1983 claim based on the Equal Protection Clause to the extent that either claim is premised on (1) the 1987 zoning of Cadillac Heights, (2) the granting of the SUP to Texas By Products in 1997, and (3) the presence in Cadillac Heights of the City's wastewater treatment plant, the Dixie Metals and National Lead Industries lead smelters, the Darling International (formerly Valcar) animal rendering plant, and the Dallas Packing Company. The City's Motion for Summary Judgment is otherwise **DENIED**. The Court **DENIES** the City's Motion to Strike and Motion for Leave to File a Supplemental Appendix, **GRANTS** Plaintiffs' Motion to Strike and Motion to Disregard New Arguments. The Court will not permit further motions to dismiss, except for motions directed to new pleadings.

**SO ORDERED.**

May 24, 2006.

BARBARA M.G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS